## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CARAUSTAR INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-0006-SCJ |
| | ) | |
| FACTORY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

THIS MATTER is before the Court on Plaintiff Caraustar Industries, Inc.'s

Motion for Summary Judgment [Doc. No. 94], and Defendant Factory Mutual

Insurance Company's Motion for Summary Judgment [Doc. No. 93] and Motion to

Compel Documents [Doc. No. 77]. For reasons given below, Plaintiff's Motion is

**DENIED**; Defendant's Motion for Summary Judgment is **GRANTED** as to Count

I of its counterclaim and **DENIED AS MOOT** as to Count II of its counterclaim; and

Defendant's Motion to Compel is **DENIED AS MOOT**.

## BACKGROUND

Defendant insured Plaintiff's properties under an FM Global Advantage

Policy with a term of June 1, 2009 to June 1, 2010 (the "Policy"). (Def.'s Statement

1

of Material Facts ("DSMF") [Doc. No. 93-12] ¶ 5.)  During that period,  three of

Plaintiff's Austell, Georgia properties were damaged by a flood. (*Id.* at ¶ 4.) Plaintiff

filed flood loss claims under the Policy, which Defendant denied on the grounds

that the damaged properties were not covered by flood insurance.  (*Id.* at ¶ 6.)

The Policy's Declarations Page provides: "This policy covers property, as

described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE,

except as hereinafter excluded, while located as described in this  Policy." (*Id.* at ¶

7.)  The Policy covered numerous Caraustar plants throughout North America,

which were referred to as "Insured Locations."  (*Id.* at ¶ 8.)  The Policy defined

"Insured Locations" as follows:

> A.    The coverages under this Policy apply to an Insured Location *unless otherwise provided*.
>
> Insured Location is a location:
>
> 1) listed on a Schedule of Locations attached to this Policy.
> 2) covered as a Miscellaneous Unnamed Location.
> 3) covered under the terms and conditions of the Automatic Coverage or Errors and Omissions provisions.

(*Id.* at ¶ 4 (emphasis added).)

The Schedule of Locations (the "Schedule")—attached to the Policy as

Appendix A—individually lists each insured locations. (Compl. [Doc. No. 1-1] Ex.

A, App. A.)  Each location entry provides a unique location number, the location's

address, the location's description as provided by Plaintiff, and any coverage exclusions that apply to that location. (DSMF [Doc. No. 93-12] ¶ 11.) In the Schedule, the flooded Austell plants are listed as location numbers 1, 1A, and 1B (the "Austell Locations"). (*Id.* at ¶ 13.) The relevant portion of the Schedule appears below:

| Location No. | Index No. | Location Description |
|---|---|---|
| 0001 | 084117.60 | USA, GEORGIA, AUSTELL, 30106-3227<br>3400 Joe Jerkins Boulevard<br><br>Austell Box Board<br>Caraustar Mill Group<br><br>Coverage at this location does not include:<br><br>Any coverage provided at Locations 1A or 1B<br>Flood<br><br>The foregoing is subject to the provisions, terms and conditions of this Policy. |
| 001A | 084117.60 | USA, GEORGIA, AUSTELL, 30106-3227<br>3300 Joe Jerkins Boulevard<br><br>Mill 1 and Converting<br>Caraustar Mill Group<br><br>Coverage at this location does not include:<br><br>Any coverage provided at Locations 1 or 1B<br>Flood<br><br>The foregoing is subject to the provisions, terms and conditions of this Policy. |
| 001B | 084117.60 | USA, GEORGIA, AUSTELL, 30106-3227<br>3400 Joe Jerkins Boulevard<br><br>Mill 2<br>Caraustar Mill Group<br><br>Coverage at this location does not include:<br><br>Any coverage provided at Locations 1 or 1A<br>Flood<br><br>The foregoing is subject to the provisions, terms and conditions of this Policy. |

(*Id.* at ¶ 18.)  Similarly, the list of exclusions for Location 4 (the "Charlotte Location") states:

Location 4

> Coverage at this location does not include:
>
> Any coverage provided at Locations 4B
> Flood
> Stock & Supplies
> Time Element

(*Id.* at ¶ 20.)

Plaintiff sued, asking for judgment on its flood damages.  Defendant counterclaimed, seeking a declaration that the Austell Locations were not covered by flood insurance, or, in the alternative, asking the Court to reform the Policy to conform with the parties' intent that the Austell Locations be excluded from flood coverage.

Plaintiff argues that the phrase "Coverage at this location does not include:" followed by "Any coverage provided at Locations 1A or 1B Flood" should be interpreted to mean that the Policy's coverage for Location 1 does not include any coverage provided at Locations 1A or 1B for Flood.[1]  (Pl.'s Resp. Mem. [Doc. No. 104] 4.)  Thus, Plaintiff reasons, any Flood coverage applying at Location 1 stands

---

[1] While this Order might use one of the Austell Locations to illustrate an example, the same arguments and analysis are applicable to each Austell Location.

on its own and does not overlap with any flood coverage applying at Locations 1A or 1B." (*Id.*)

Defendant contends that the phrase "Coverage at this location does not include:" prefaces a list of two items; thus the Policy should be interpreted to mean that Location 1 is not covered by any (1) coverage provided at locations 1A or 1B, nor (2) Flood. (Def.'s Mem. [Doc. No. 93-1] 7.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law."[2]

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable

---

[2] On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. The amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens." Committee on Rules of Practice and Procedure, Report of the Judicial Conference, p. 14 (Sept. 2009). *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011). "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv. Comm. Notes to Fed. R. Civ. P. 56 ( 2010 Amends.). "Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." *Murray v. Ingram*, No. 3:10-CV-348-MEF, 2011 WL 671604, *2 (M.D. Ala. Feb. 3, 2011).

substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party discharges its burden merely by "'showing'— that is, pointing out to the district court— that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine [dispute] for trial." *Id.* (citations omitted).

**DISCUSSION**

The meaning of the Policy is clear and its terms are unambiguous: the Austell Locations are not covered by flood insurance. An insurance policy's meaning is a question of law decided by a court. O.C.G.A. § 13-2-1. "Although the provisions of an insurance policy will be construed against the insurer when a part is susceptible of two constructions and a court will adopt that interpretation which is most favorable to the insured, if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written." *Rucker v. Colum. Nat. Ins. Co.*, 307 Ga. App. 444, 447 (2010.) In Georgia, a court uses the following three-step analysis when interpreting an insurance policy: (1) the court must decide whether the contract's language is ambiguous; (2) if it is, the court must then apply the applicable rules of contract construction; and (3) if the ambiguity remains, the question must be submitted to a jury. *See Travelers Ins. Co. v. Blakey*, 342 S.E.2d 308, 255 Ga. 699, 700 (1986). When the terms of a written contract are unambiguous and clear, a court looks only to the contract to determine the parties' intent. *Jordan v. Smith*, 596 F. Supp. 1295, 1301 (N.D. Ga. 1984).

A court decides, as a matter of law, whether a contract is ambiguous. *UniFund Fin. Corp. v. Donaghue*, 288 Ga. App. 81, 83 (2007). An insurance policy is ambiguous when its terms are duplicitous, indistinct, or uncertain as to meaning and

expression. *Ivey v. First of Ga. Ins. Co.*, 209 Ga. App. 784, 786 (1993). A contract is not ambiguous "[m]erely because the plaintiffs and defendants differ as to the meaning of the [contract's] terms." *Jordan*, 596 F. Supp. at 1300. A contract's alternative meaning, if any, must be reasonable in order to create an ambiguity. *Auto-Owners Ins. Co. v. Barnes*, 188 Ga. App. 439, 441 (1988); *see also Chicago Title Ins. Co. v. Citizens and So. Nat. Bank*, 821 F. Supp. 1492, 1494-95 (N.D. Ga. 1993) (granting summary judgment for insurer because the insurance policy's plain language excluded coverage).

Here, the Policy unambiguously excludes flood coverage for the Austell Locations. The Declarations Page of the Policy provides: "This policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy."(DSMF [Doc. No. 93-12] ¶ 7.) The Policy provides coverage to the locations described in "Declarations—Section A," which states that "[t]he coverages under this Policy apply to an Insured Location unless otherwise provided." (*Id.* at ¶ 8.) "Insured Location" is defined as a location "listed on a Schedule of Locations attached to this Policy."(*Id.* at ¶ 4.) The Schedule of Locations lists each Insured Location along with any specific exclusions applicable to that location.

The Schedule's language is plain and unambiguous: coverage at the Austell

Locations does not include Flood. Within the Schedule, each individual location has a unique location number, an address, and a short description; and the locations are each separated by a horizontal line that runs from margin to margin. Each entry for the Austell Locations also states, "Coverage at this location does not include:"; followed by a double-line space and two items listed on separate lines. (*Id.* at ¶ 18.) The first item reads, "Any coverage provided at Location 1A or 1B"; the second item is, "Flood."[3] (*Id.*) There is only a single-line space between the listed items, which signals to the reader that each item is among the listed exclusions for that location. Another double-line space indicates the end of the list. This algorithm is followed throughout the Schedule. For example, Location No. 4 lists four exclusions, which each appear on their own line; there are single-line spaces between the exclusions, and the exclusions are book-ended by double-line spaces.

When the reader combines the plain language and elements of each entry for the Austell Locations, the meaning is clear and unambiguous: coverage at the Austell Locations does not include flood insurance.

Plaintiff's counter arguments fall under two main headings: (1) there is only one exclusion listed for the Austell Locations, "Any coverage provided at 1A or 1B Flood"; and (2) in the phrase "Coverage at this location does not include," the term

---

[3] The term "Flood" is defined in the Policy, and its meaning is not at issue.

"this location" is ambiguous.  Neither argument is reasonable.

For the most part, Plaintiff grounds its first argument in syntax.  Plaintiff points the to the lack of commas, semi-colons, parentheses, etc. between the listed items, and Plaintiff proposes its own novel solution by combining the two listed elements into one.  The result is an nonsensical statement: "Any coverage provided at 1A or 1B Flood." In Plaintiff's proposed exclusion, the term "1B Flood" functions as a proper noun, as a place named "1B Flood"; the Schedule does not define such a place.  Alternatively, Plaintiff's proposed reading can be rendered meaningful if we insert a word: "Any coverage provided at Locations 1A or 1B *for* Flood."  But the need to insert a word counsels against such a reading, particularly when there is a alternate and unambiguous reading that does not require such an addition.  *See Jordan*, 596 F. Supp. at 1301.

Plaintiff's second counter argument is likewise unconvincing.  Plaintiff contends that the word "this location" is ambiguous when it appears in the phrase, "Coverage at this location does not include."  In the Schedule the phrase appears within an individual location entry.  Each location entry has a location number, address, and location description; and each location entry is separated by lines that run along the horizontal axis of the page.  "This location" clearly means the location being described in that individual location entry.

Because the meaning of the contract is unambiguous, the Court's inquiry ends: the Court need not address the parties' arguments as to their intentions or purposes. *See Travelers Ins. Co.*, 255 Ga. at 700; *Jordan,* 596 F. Supp. at 1301.

## CONCLUSION

For the reasons given above, Plaintiff's Motion for Summary Judgment [Doc. No. 94] is **DENIED**; Defendant's Motion for Summary Judgment [Doc. No. 94] is **GRANTED** as to Count I of its counterclaim and **DENIED AS MOOT** as to Count II of its counterclaim; and Defendant's Motion to Compel [Doc. No. 77] is **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 13th day of June, 2011.

s/Steve C. Jones
STEVE C. JONES
UNITED STATES DISTRICT JUDGE

11